[Cite as *State v. Jordan*, 2014-Ohio-3208.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 14AP-01 |
| v. | : | (C.P.C. No. 13CR-3386) |
| Jason R. Jordan, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on July 22, 2014

*Ron O'Brien,* Prosecuting Attorney, and *Seth L. Gilbert,* for appellee.

*Todd W. Barstow,* for appellant.

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Defendant-appellant, Jason R. Jordan, appeals from a judgment of the Franklin County Court of Common Pleas, finding him guilty, pursuant to jury verdict, of two counts of robbery, both in violation of R.C. 2911.02. Because (1) both sufficient evidence and the manifest weight of the evidence support defendant's convictions, and (2) the court did not violate defendant's Crim.R. 43(A) right to be present, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On June 25, 2013, the state indicted defendant on one count of robbery, a felony of the second degree, and one count of robbery, a felony of the third degree. The events giving rise to the indictment occurred on June 10, 2013.

{¶ 3} On June 10, 2013, Zachary West was working as a mail carrier for the United States Postal Service. He wore his mail carrier's uniform and carried his mail bag on his shoulder. At around noon that day, West was delivering mail to homes and businesses located around the 2600 block of North High Street, in the Clintonville area of Columbus, Ohio. West was walking on foot delivering mail and had almost completed his route. Before returning to his vehicle, he had to "go down a back alley towards another back alley to do a business drop in their back of the business." (Tr. 73.) It was a rainy day and there were few people outdoors.

{¶ 4} As West turned the corner to go from one alley to the next, defendant confronted him. West stated that defendant initially was four or five feet away from him, but that defendant then approached West, coming close enough to West that the men were "face to face." (Tr. 75.) Defendant reached for West's mail bag, "grabbed the bag, and said, 'Give me the bag.' " (Tr. 75.) West told defendant " 'No,' " and defendant then struck West in the face and ran off. (Tr. 75.)

{¶ 5} After the altercation, West went back to his vehicle and called his manager to report the incident. West's manager said that he would call the police, and told West that the police would meet West at his vehicle. When the police arrived, West spoke to Detective Kim Atwood of the Columbus Police Department. Detective Atwood noted that when she encountered West he had "a small laceration below his right eye" and his "cheek was a little puffy," injuries which West attributed to defendant striking him. (Tr. 39.) West provided Detective Atwood with a description of the individual who struck him. West described the suspect as a short, black male, in his mid to late thirties, with an unruly Afro and a long goatee. Detective Atwood placed West's description of the suspect into her report, and provided the description to other uniformed officers in the area.

{¶ 6} When Officer Daniel Brown began his shift later that day, he saw Detective Atwood's description of the robbery suspect. Officer Brown explained that defendant came to his mind as a potential suspect, as Officer Brown had come into contact with defendant on other occasions, and knew that defendant's features matched Detective Atwood's description of the suspect. Accordingly, the police compiled a photo array which included defendant's photograph, and a blind administrator who was unfamiliar with the case presented the photo array to West the following day. The blind administrator told

West that if he saw the person who had assaulted him in the photo array to circle that person's photo, but emphasized that West "did not have to circle anybody" if he was uncertain. (Tr. 87.) West selected defendant's photo from the array. West testified at trial that, as a result of this incident, he resigned from the post office because he "felt [he] was unsafe" at his job. (Tr. 91.)

{¶ 7} The jury heard the above noted evidence, and found defendant guilty on both counts of robbery charged in the indictment. At the sentencing hearing, the court determined that the third degree felony robbery count merged into the second degree felony robbery count, and sentenced defendant to a four-year term of imprisonment on the second degree felony robbery conviction.

## II. ASSIGNMENTS OF ERROR

{¶ 8} Defendant appeals, assigning the following errors:

> I. THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF ROBBERY AS THAT VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> II. APPELLANT WAS DENIED OF HIS RIGHT TO BE PRESENT AND THE PRESENCE AND ASSISTANCE OF HIS COUNSEL DURING A CRITICAL STAGE OF HIS JURY TRIAL, AND HIS RIGHT TO DUE PROCESS AND A FUNDAMENTALLY FAIR JURY TRIAL AS REQUIRED BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTIONS FIVE, TEN AND SIXTEEN OF THE OHIO CONSTITUTION AND OHIO RULE OF CRIMINAL PROCEDURES 43(A).

## III. FIRST ASSIGNMENT OF ERROR – SUFFICIENCY AND MANIFEST WEIGHT

{¶ 9} Defendant's first assignment of error asserts that neither sufficient evidence nor the manifest weight of the evidence support his convictions.

{¶ 10} Whether evidence is legally sufficient to sustain a verdict is a question of law.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  Sufficiency is a test of adequacy.  *Id.*  The evidence is construed in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt.  *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus; *State v. Conley*, 10th Dist. No. 93AP-387 (Dec. 16, 1993).  When reviewing the sufficiency of the evidence the court does not weigh the credibility of the witnesses.  *State v. Yarbrough,* 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79.

{¶ 11} Sufficiency of the evidence and manifest weight of the evidence are distinct concepts; they are "quantitatively and qualitatively different." *Thompkins* at 386. When presented with a manifest weight argument, we engage in a limited weighing of evidence to determine whether sufficient competent, credible evidence permits reasonable minds to find guilt beyond a reasonable doubt.  *Conley*; *Thompkins* at 387 (noting that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony").  In the manifest weight analysis the appellate court considers the credibility of the witnesses and determines whether the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).  Determinations of credibility and weight of the testimony remain within the province of the trier of fact.  *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.  The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part or none of a witness's testimony."  *State v. Raver,* 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 12} Defendant was convicted of two counts of robbery, both in violation of R.C. 2911.02. R.C. 2911.02(A)(2) and (3) provides, in relevant part, that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another," or "[u]se or threaten the immediate use of force against another."

{¶ 13} The evidence presented at trial established that, as West was delivering mail, he turned a corner and was "face to face" with defendant. (Tr. 75.) Defendant grabbed West's mail bag and said " 'Give me the bag.' " (Tr. 75.) West said that defendant pulled on the bag and tried to take the bag off of West's person. When defendant tried to take West's mail bag, West said " 'No,' " and defendant then "struck [West] in the face and took off." (Tr. 75.) West stated that defendant hit him with a closed fist, causing a "bruise and swelling on [West's] right cheek." (Tr. 79.) Photos taken immediately after the incident showed an abrasion just below West's right eye and swelling on his cheek. This evidence was sufficient to establish that defendant, in attempting to deprive West of his mail bag, used force against West and inflicted physical harm on West. Accordingly, sufficient evidence supported defendant's robbery convictions.

{¶ 14} Defendant notes in his brief that West described the encounter as being quite brief, that it was raining when the incident occurred, and that the robbery occurred in an alley. Defendant asserts that "[t]hose factors cast doubt on West's identification and render it not worthy of belief." (Appellant's brief, 2-3.)

{¶ 15} Although West testified that the entire encounter with defendant lasted approximately two seconds, he also stated that he had ample opportunity to look at defendant's face and stature. West stated that he completely saw defendant's face, noting that defendant was not wearing anything to conceal his face. West stated that he was "[e]ye to eye" with defendant. (Tr. 79.) West also indicated that, despite the rain, the light was not bad that day. When the blind administrator showed West a photo array containing defendant's photo, West stated that he was able to select defendant "[b]ased on the facial features" and "because of the triangular face and the eyes and nose." (Tr. 87.) Accordingly, there was ample evidence in the record to support the jury's determination that defendant was the individual who attempted to deprive West of his mail bag and struck West in the face on June 10, 2013.

{¶ 16} Moreover, although under a manifest weight of the evidence analysis we are able to consider the credibility of the witnesses, "in conducting our review, we are guided by the presumption that the jury, * * * is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Tatum*, 10th Dist. No. 10AP-626, 2011-

Ohio-907, ¶ 5, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). The jury was in the best position to judge West's credibility, and the jury found West to be a credible witness, as they were entitled to do. Engaging in the limited weighing of the evidence which we are permitted, we cannot say the jury clearly lost its way when it found defendant guilty of robbery beyond a reasonable doubt. The manifest weight of the evidence supports defendant's convictions.

{¶ 17} Based on the foregoing, defendant's first assignment of error is overruled.

## IV. SECOND ASSIGNMENT OF ERROR – RIGHT TO BE PRESENT

{¶ 18} Defendant's second assignment of error asserts that the trial court committed reversible error when it denied defendant his right to be present at a critical stage of the proceedings.

{¶ 19} A defendant has a fundamental right to be present at all critical stages of his criminal trial. *State v. Hill,* 73 Ohio St.3d 433, 444 (1995), citing Crim.R. 43(A) and the Ohio Constitution, Article I, Section 10. The United States Supreme Court has stated that an accused is guaranteed the right to be present at all stages of a criminal proceeding that is critical to its outcome when his or her absence may frustrate the fairness of the proceedings. *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). This right is embodied in Crim.R. 43(A). Crim.R. 43(A) provides that, "the defendant must be physically present at every stage of the criminal proceeding and trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence, except as otherwise provided by these rules."

{¶ 20} Defendant asserts that his Crim.R. 43(A) right to be present was violated when he was not present during the discussion between the court and counsel regarding the answers the court should provide to the jury's questions. The jury sent three questions out to the court during their deliberations, and defendant's counsel, the prosecutor, and the court discussed the questions and amicably determined how the court should answer the questions. Indeed, defendant notes that "[c]ounsel and the trial court conferred and agreed on answers to each question without objection from either side." (Appellant's brief, 4.)

{¶ 21} Defendant asserts that he was not present during the discussion between the court and counsel regarding the jury's questions. Initially, we note that there is

nothing in the record to indicate either that defendant was or was not present during these discussions. The court reporter noted that the discussion of the jury's questions occurred in open court, out of the presence and hearing of the jury, but did not note whether defendant was present. However, we discern nothing from the court reporter's omission, as the court reporter did not note defendant's presence at any point in the trial.

{¶ 22} Regardless, even if we were to assume that defendant was absent from the discussion regarding the jury's questions, we would not find that defendant's absence amounted to reversible error. The Supreme Court of Ohio has already addressed the issue of whether a defendant must be present for the discussion between counsel and the court regarding the answer to a jury's question. In *State v. Campbell*, 90 Ohio St.3d 320 (2000), the court found no error where a capital murder defendant was absent from an in-chambers discussion between the court and counsel regarding the trial court's response to a jury question. The Supreme Court of Ohio held as follows:

> Campbell had no right to be present at the legal discussion of how the question should be answered. Nor did he have a right to be present when the judge sent the note to the jury room. Although the oral delivery of jury instructions in open court is a critical stage of trial, the trial court here did not instruct the jury in open court; instead, he sent a note. A defendant benefits from his presence, and may be harmed by his absence, when instructions are given in open court. But these potential benefits and harms do not exist when the judge merely sends a note to the jury room. We therefore hold that the sending of the note was not a critical stage of the trial.

(Citations omitted.) *Id.* at 346. *See also State v. Ferguson*, 8th Dist. No. 86439, 2006-Ohio-799, ¶ 56 (noting that "the discussion regarding the jury question was not a critical stage of the trial").

{¶ 23} Defendant asserts that *State v. Shenoda*, 10th Dist. No. 01AP-1409, 2002-Ohio-4296, supports his contention that he had a right to be present when counsel and the court discussed the answers to the jury questions. In *Shenoda,* the jury presented several written questions to the trial court during their deliberations. In response, the trial judge "entered the jury room with the court reporter," but without either counsel or defendant, "and provided the jury with an oral summary of the testimony of * * * a

witness for the state, and reinstructed the jury as to its duty to consider each count separately." *Id.* at ¶ 16. This court noted that "where a trial court provides the jury with further instructions or other substantive information out of the presence of the defendant, prejudice is presumed and a new trial must be ordered." *Id.* at ¶ 18. *Shenoda* is inapplicable to the instant case, as the trial judge herein did not speak directly to the jury. Rather, the record demonstrates that after counsel and the court determined the appropriate answers to the jury's questions, the court's bailiff wrote the answers down, and delivered the written answers to the jury. Pursuant to *Campbell*, the discussion between the court and counsel regarding the answers to the jury's questions, and the sending of the written answers back to the jury room, were not critical stages of the proceedings to which defendant was entitled to be present.

{¶ 24} Based on the foregoing, defendant's second assignment of error is overruled.

## V. DISPOSITION

{¶ 25} Having overruled defendant's first and second assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and BROWN, JJ., concur.

————————————————